# United States Court of Appeals

### For the Eighth Circuit

_____

No. 19-2182
_____

United States of America

*Plaintiff - Appellee*

v.

Lorando Demond Williams

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: April 13, 2020
Filed: August 7, 2020
_____

Before LOKEN, SHEPHERD, and ERICKSON, Circuit Judges.
_____

LOKEN, Circuit Judge.

Conducting surveillance based on a tip that Ronald Buchanan was distributing drugs from a white Mercedes-Benz in a church parking lot, Des Moines police officers observed two men exiting a white Mercedes-Benz to meet with occupants of vehicles driving in and out of the parking lot. Suspecting these were drug transactions, two officers approached the Mercedes-Benz and detected a strong odor of marijuana. Buchanan was in the driver's seat and Lorando Williams was in the

passenger's seat. The officers searched the car and the two men. They found $313 and 11.97 grams of cocaine base on Williams's person. In the driver's door pocket, they found a baggie containing 43.8 grams of marijuana and a Crown Royal bag containing 27.32 grams of cocaine, 18.59 grams of cocaine base, and 0.7 grams of marijuana. A baggie in the front passenger seat contained 2.87 grams of cocaine, and a bottle in the car's center console contained 86 grams of codeine. Williams pleaded guilty to possession with intent to distribute cocaine base, admitting he possessed the drugs found on his person. See 21 U.S.C. § 841(a)(1), (b)(1)(C).

At the May 2019 sentencing, the district court[1] found that Williams's relevant offense conduct included possession of all drugs found in the car because they were part of "jointly undertaken criminal activity" with Buchanan. This resulted in a base offense level of 24 and an advisory guidelines sentencing range of 77 to 96 months imprisonment. The court imposed a 77 month sentence, rejecting Williams's request for a downward variance to account for any future state court sentence that would follow revocation of the parole Williams was serving for an Iowa drug and firearm conviction. Williams appeals, arguing the district court (i) committed plain procedural sentencing error by failing to rule on his requests for concurrent sentences and for a federal sentence reduction to account for "potential future actions of Iowa's Parole Board," and (ii) clearly erred in attributing drugs found in the driver's door pocket to Williams. We affirm.

## I. The Concurrent Sentence Issue.

Williams was serving parole for the 2015 Iowa conviction when he committed this federal offense. Parole had not been revoked at the time of his federal sentencing. Had parole been revoked, the advisory guidelines recommend "that the

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation." USSG § 5G1.3, comment. (n.4(C)). Here, revocation was only anticipated. In these circumstances, the court "has discretion to determine whether a federal sentence should run concurrently with or consecutively to an anticipated state sentence." United States v. Hall, 825 F.3d 373, 375 (8th Cir. 2016), citing Setser v. United States, 566 U.S. 231, 235-36 (2012). A district court should exercise this discretion "intelligently." Setser, 566 U.S. at 242 n.6.

In his objections to the Presentence Investigation Report ("PSR"), Williams requested that his sentence "run fully concurrent" to the 2015 Iowa sentence. His Sentencing Memorandum explained that, if the State of Iowa proceeds to revoke parole, the Bureau of Prisons "is likely to deny credit for any time for which he is awarded Iowa credit." Therefore, to credit Williams "with all the time he has served," the Court should "order the sentences run concurrently, select the appropriate [federal] sentence, then reduce the sentence by the number of months between his first incarceration date of October 23, 2018 and the date of sentencing." The Probation Officer responded: "Because the state sentence has not been revoked, the Court may run the term for the instant offense consecutive or concurrent to the state offense; however, *the Court may also exercise its discretion and refrain from any such order*" (emphasis added).

At sentencing, the district court asked defense counsel to clarify the "5G1.3 argument" regarding an anticipated state prison term. Counsel responded that Williams's parole had not yet been revoked "but he may be subject to revocation. The court has the discretion to run this sentence concurrently or consecutively with that [under USSG § 5G1.3(d)]." Counsel urged the court to "use that tool as another means . . . to exercise its discretion to give the defendant a reasonable sentence in this case." Turning to the 18 U.S.C. § 3553(a) sentencing factors, counsel then argued that "the court should look at something substantially lower than what's recommended under the advisory guideline range." Government counsel, in urging

a sentence in the middle of the guidelines range, 86 months, responded that Application Note 4(C) to § 5G1.3 recommends that "the federal sentence be imposed consecutive to any revocation of parole." At the conclusion of these arguments, the district court stated, "based on the 3553(a) analysis," that it would impose a sentence at the bottom of the advisory range -- 77 months imprisonment with credit for time served since October 23, 2018. As to whether the State of Iowa may revoke parole and impose an anticipated term of imprisonment, "the court in its discretion is not going to address that." Defense counsel made no objection to this last ruling.

On appeal, Williams puts a new spin on this aspect of the sentencing proceedings. He now contends that the district court committed *procedural* error by failing to rule on his "objections" regarding the anticipated revocation of parole and his request for a downward variance on this ground. He asserts the district court "did not demonstrate an awareness that it was or might be consigning Williams to serve consecutive sentences," "did not address at all Williams's concern about the possible parole revocation," and "appears not even to have addressed . . . whether Williams might be deemed by Iowa . . . to be in primary state custody" after his arrest and "the effect that this determination might have on the [Bureau of Prisons execution of the] sentence [the court] imposed." This contention insults the intelligence of one of our most experienced sentencing judges. Though perhaps creative, it is also without merit for several reasons.

First, in exercising discretion not to address Williams's request that the sentence be made concurrent with an anticipated state sentence, the district court adopted the Probation Officer's recommendation that it "refrain from any such order." Thus, the premise for Williams's contention that the district court *erred* in failing to rule is the assertion, first made in his brief on appeal without supporting authority, that the Probation Officer's "view, unsupported by legal authority . . . is incorrect." That is an issue of law, known to defense counsel when the district court ruled. As

Williams did not raise this issue to the district court, it was not preserved for appeal. See United States v. Collier, 585 F.3d 1093, 1097 (8th Cir. 2009).

Second, the Probation Officer's view is not "unsupported by legal authority." Rather, it is supported by the most powerful of authorities, the Supreme Court of the United States. In Setser, after stating that a district court should exercise its discretion intelligently when dealing with an anticipated state sentence, the Court stated: "In some situations, a district court may have inadequate information *and may forbear*." 566 U.S. at 242 n.6 (emphasis added); see United States v. Davis, 859 F.3d 572, 575 (8th Cir. 2017) ("The district court did not err by expressly not considering the fact that [the defendant's] probation could possibly be revoked," citing Setser.).

Third, even without this controlling authority, it should go without saying that one way to exercise discretion is to decline to take up an issue because the proper exercise of discretion turns on future events. The district court clearly understood its discretionary authority -- identifying USSG § 5G1.3(d) as the relevant guideline -- and chose "*in its discretion*" to forbear for this reason. We review that decision for abuse of discretion. See Hall, 825 F.3d at 375-76. Labeling it a failure-to-rule procedural error is ludicrous.

Finally, Williams does not argue the district court abused its discretion, and with good reason. Williams urged the district court to vary downward from the within-range sentence the court thought appropriate, applying the § 3553(a) sentencing factors, based on actions the Iowa Board of Parole, an Iowa state court, and the federal Bureau of Prisons *might take* in the future. Failure to explain why it did not vary downward for this reason when Williams did not request further explanation was neither an abuse of discretion nor plain error. See, e.g., United States v. Lee, 553 F.3d 598, 600-01 (8th Cir. 2009).

## II. The Drug Quantity Issue.

The PSR recommended that all drugs found in the car should be attributed to Williams in determining his offense conduct. Williams objected that only the drugs found on his person should be included. In response, the Probation Officer noted the relevant conduct provisions, USSG § 1B1.3(a)(1)(A) and (B), and stated:

> In response to a complaint of Buchanan distributing drugs from a church parking lot, law enforcement officers (LEO) initiated surveillance and observed Buchanan and the defendant entering and exiting a Mercedes-Benz while multiple vehicles came and went from the church parking lot with the occupants appearing to be meeting with Buchanan and the defendant. LEO believed these actions to be consistent with drug transactions. Therefore, the drugs in the Mercedes-Benz, whether possessed by Buchanan, the defendant, or both were within the scope of the jointly undertaken criminal activity, in furtherance of the offense, and reasonably foreseeable in connection with the distribution of drugs. As a result, defendant is attributed all the drugs in the vehicle.

At sentencing, the district court adopted the Probation Officer's reasoning and overruled Williams's drug quantity objection.

On appeal, Williams argues this drug quantity finding lacked a sufficient factual basis to attribute the drugs found in the driver's door pocket to Williams under governing relevant conduct principles. We review the district court's quantity finding for clear error. See United States v. Escobar, 909 F.3d 228, 246 (8th Cir. 2018) (standard of review). The government argues that unobjected-to facts recited in the PSR support attributing the drugs in the driver's door pocket to Williams and, in any event, any drug quantity error was harmless.

The Guidelines include as relevant conduct "all acts or omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance

of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity that occurred during the commission of the offense of conviction." USSG § 1B1.3(A)(1)(B). Application Note 3(A) defines "jointly undertaken criminal activity" as "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy."

Focusing on the fact that Williams in pleading guilty only admitted intent to distribute the cocaine found on his person, and on the PSR statement that Buchanan admitted knowledge of the Crown Royal bag and baggie found in the driver's door pocket, Williams argues "there was insufficient basis for the district court to conclude that Buchanan had been dealing drugs along with Williams as part of a jointly undertaken criminal activity." But this focuses the issue too narrowly. In determining the scope of "jointly undertaken criminal activity," the district court "may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." USSG § 1B1.3, comment. (n.3(B)); see United States v. Sacus, 784 F.3d 1214, 1219-20 (8th Cir. 2015). Here, as the Probation Officer noted, Williams and Buchanan were jointly engaged in selling drugs to multiple buyers from the white Mercedes-Benz. Even if they distributed different drugs and each brought his own supply and would keep the proceeds of his individual sales, the district court did not clearly err in finding that this was jointly undertaken criminal activity and therefore the total quantity of unsold drugs found in the car should be attributed to each participant. See Escobar, 909 F.3d at 246-47.

We also agree with the government that any error in determining drug quantity for sentencing purposes was harmless. The district court expressly stated, "if I've erred in the advisory guideline, I would sentence the defendant to 77 months based on the § 3553(a) analysis. I always think . . . drug quantity is a poor substitute for culpability here, and I don't think that the guideline about drug quantity has much relationship to the sentence that I find to be sufficient but not greater than necessary." We have repeatedly held that an error in applying the guidelines is harmless if the

-7-

district court in explaining the sentence "makes clear that the judge based the sentence . . . on factors independent of the Guidelines." United States v. McGee, 890 F.3d 730, 737 (8th Cir. 2018) (quotation omitted).

The judgment of the district court is affirmed.

_____